UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-3 HASSAN AKHTAR,
D-4 CURTIS MALLORY,
D-9 VISHNU PRADEEP MEDA,
D-10 PRAMOD RAVAL, M.D.,
D-14 CHIRADEEP GUPTA,
D-15 RICHARD SHANNON,
D-16 NABILA MAHBUB,
D-17 THEODORE HAILE,

          Defendants.
_____/

Case No. 10-CR-20014
Judge: Denise Page Hood

VIO.:  18 U.S.C. § 1349
       18 U.S.C. § 371
       18 U.S.C. § 1956
       18 U.S.C. § 1957
       18 U.S.C. § 982
       18 U.S.C. § 2

FILED '10 JUL 13 P3:44
U.S. DIST. COURT
EAST DIST MICH
DETROIT

**FIRST SUPERSEDING INDICTMENT**

THE GRAND JURY CHARGES:

**General Allegations**

At all times relevant to this Indictment:

    1.    The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United State Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

    2.    Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. The Medicare Program included coverage under two primary components, hospital insurance (Part A) and medical insurance (Part B). Part A covered physical and occupational therapy services if a facility was certified by CMS as meeting certain requirements. Part B of the Medicare Program covered the cost of physicians' services and other ancillary services not covered by Part A. The physical therapy, occupational therapy and other services at issue in this indictment were covered by Part A and Part B.

4. National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan. Wisconsin Physicians Service was the CMS contracted carrier for Medicare Part B, which included home visits, in the state of Michigan. TrustSolutions, LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan.

5. By becoming a participating provider in Medicare, enrolled providers agree to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

6. Upon certification, the medical provider, whether a clinic or an individual, is assigned a provider identification number for billing purposes (referred to as a PIN). When the medical provider renders a service, the provider submits a claim for reimbursement to the Medicare contractor/carrier that includes the PIN assigned to that medical provider. When an individual medical provider is associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

7.      Health care providers are given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers can only submit claims to Medicare for services they rendered and providers must maintain patient records to verify that the services were provided as described on the claim form.

8.      In order to receive reimbursement for a covered service from Medicare, a provider must submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered.

9.      A home health agency is an entity that provides health services, including but not limited to skilled nursing, physical and occupational therapy, and speech pathology services to homebound patients.

10.     Patient Choice Home Healthcare, Inc. (PCHH) was a Michigan corporation, doing business at 21700 Greenfield Road, Suite 228, Oak Park, Michigan. PCHH was a home health agency that purportedly provided in-home physical therapy, occupational therapy, speech pathology and/or skilled nursing services to patients. PCHH was a Medicare provider and submitted claims directly to Medicare.

11.     All American Home Care, Inc. (AAHC) was a Michigan corporation, doing business at 21700 Greenfield Road, Suite 230, Oak Park, Michigan. AAHC was a home health agency that purportedly provided in home physical therapy, occupational therapy, speech pathology and/or skilled nursing services to patients. AAHC was a Medicare provider and submitted claims directly to Medicare.

12. Mallory Marketing, LLC (Mallory Marketing), was a Michigan corporation, doing business at 27100 Greenfield Road, Suite 240, Oak Park, Michigan that provided paid patient referrals to home health agencies

13. SH Consultant and Staffing, Inc. (SHCS) was a Michigan corporation, doing business on 33040 Karin Drive, Suite 212, Sterling Heights, Michigan owned by HASSAN AKHTAR.

14. Total Care Physical Therapy and Rehabilitation, Inc. (Total Care) was a Michigan corporation, doing business at 17950 Woodward Avenue, Detroit Michigan and was owned by CHIRADEEP GUPTA. Total Care purportedly provided contract physical therapy services to PCHH and AAHC.

15. Unicare Rehab, Inc. (Unicare) was a Michigan corporation doing business at 21700 Greenfield Road, Suite 305, Oak Park Michigan owned by CHIRADEEP GUPTA during much of the time that the conspiracy was in operation. Unicare was later purchased from GUPTA by a co-conspirator. Unicare purportedly provided contract physical therapy services to PCHH and AAHC.

16. Shannon Community Liaison, Inc. (SCL) was a Michigan Corporation doing business at 16500 North Park Drive, Apt. 607, Southfield, Michigan owned by RICHARD SHANNON. SCL provided paid patient referrals to AAHC.

17. HASSAN AKHTAR, a resident of Oakland County, Michigan, was an owner and controller of AAHC.

18. CURTIS MALLORY, a resident of Wayne County, Michigan, was an owner and controller of Mallory Marketing. Mallory Marketing recruited patients for PCHH and AAHC.

19. PRAMOD RAVAL, M.D., a resident of Oakland County, Michigan, was a physician licensed in the state of Michigan.

20. VISHNU MEDA, a resident of Oakland County, Michigan, was a licensed physical therapy assistant.

21. CHIRADEEP GUPTA, a resident of Oakland County, Michigan, was a physical therapist and owner of Total Care and Unicare.

22. RICHARD SHANNON, a resident of Oakland County, was an owner and controller of SCL and a patient recruiter.

23. NABILA MAHBUB , a resident of Wayne County, was an office manager at AAHC.

24. THEODORE HAILE, a resident of Oakland County, was a patient recruiter for AAHC.

## COUNT 1
### (18 U.S.C. § 1349 - Health Care Fraud Conspiracy)

**D-3 HASSAN AKHTAR**
**D-4 CURTIS MALLORY**
**D-9 VISHNU MEDA**
**D-14 CHIRADEEP GUPTA**
**D-15 RICHARD SHANNON**
**D-16 NABILA MAHBUB**
**D-17 THEODORE HAILE**

25. Paragraphs 1 through 24 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

26. From in or around August 2007 and continuing through in or around September 2009, the exact dates being unknown to the Grand Jury, at Wayne County, in the Eastern District of Michigan, and elsewhere, the defendants, HASSAN AKHTAR, CURTIS MALLORY,

VISHNU MEDA, CHIRADEEP GUPTA, RICHARD SHANNON, NABILA MAHBUB and THEODORE HAILE did willfully and knowingly combine, conspire, confederate and agree with each other and others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and service.

### Purpose of the Conspiracy

27.     It was a purpose of the conspiracy for defendants HASSAN AKHTAR, CURTIS MALLORY, VISHNU MEDA, CHIRADEEP GUPTA, RICHARD SHANNON, NABILA MAHBUB, THEODORE HAILE and others to unlawfully enrich themselves by, among other things, (a) submitting false and fraudulent claims to Medicare; (b) offering and paying kickbacks and bribes to Medicare beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare beneficiary numbers by the conspirators as the bases of claims filed for physical therapy and other services; (c) soliciting and receiving kickbacks and in return for arranging for the furnishing of services for which payment may be made by Medicare by providing their Medicare beneficiary numbers, which formed the basis of claims filed for physical therapy and other services; (d) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks; and (e) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

**Manner and Means**

28.     The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

29.     A co-conspirator would maintain a valid Medicare provider number for PCHH to submit Medicare claims for the cost of physical therapy, occupational therapy and other services that were medically unnecessary and were not provided.

30.     HASSAN AKHTAR and others would maintain a valid Medicare provider number for AAHC to submit Medicare claims for the cost of physical therapy and other services that were medically unnecessary and were not provided.

31.     A co-conspirator would control the day-to-day operations at PCHH and AAHC.

32.     HASSAN AKHTAR and others would assist the co-conspirator in controlling the day-to-day operations at AAHC.

33.     CURTIS MALLORY, RICHARD SHANNON, THEODORE HAILE and other conspirators would offer and pay kickbacks and bribes to Medicare beneficiaries who would serve as purported patients at PCHH and AAHC. The Medicare beneficiaries would receive cash and other remuneration in exchange for signing documents making it appear that they had received the treatments being billed to Medicare, when in fact such treatments were medically unnecessary and were not provided. Defendants CURTIS MALLORY, RICHARD SHANNON, THEODORE HAILE and others would receive payments from co-conspirators for each patient they recruited through this kickback scheme.

34.     Physicians would sign medical documentation ordering physical therapy and other services purportedly provided and billed to Medicare by PCHH and AAHC, which were medically unnecessary and were not provided.

35. HASSAN AKHTAR, VISHNU MEDA, NABILA MAHBUB and other co-conspirators would fabricate and falsify medical and billing documents used to bill Medicare for physical therapy and other services that were not medically necessary and were not provided.

36. HASSAN AKHTAR, NABILA MAHBUB and other co-conspirators would create and fabricate medical and billing documents to facilitate the commencement and billing of home health services purportedly provided by therapists and therapy assistants working for PCHH and AAHC.

37. VISHNU MEDA and others would draft and sign therapy notes and other records for therapy that would be billed to Medicare by AAHC, making it appear that physical therapy and other services had been provided, when in fact, it had not.

38. CHIRADEEP GUPTA would be paid by the owners of PCHH and AAHC to have physical therapists and physical therapy assistants in his employ draft and sign therapy notes and other records for therapy that would be billed to Medicare by PCHH and AAHC, making it appear that physical therapy and other services had been provided by PCHH and AAHC, when in fact, it had not.

39. PCHH and AAHC would submit claims to Medicare seeking reimbursement for the cost of physical therapy and other services purportedly provided to Medicare beneficiaries by defendants, VISHNU MEDA, therapists employed by CHIRADEEP GUPTA and others.

40. HASSAN AKHTAR, CURTIS MALLORY, VISHNU MEDA, CHIRADEEP GUPTA, RICHARD SHANNON, NABILA MAHBUB and THEODORE HAILE would cause PCHH and AAHC to submit claims for approximately $14,525,000 to Medicare for the cost of physical therapy and other services.

41.     The defendants would transfer and disburse, and cause the transfer and disbursement of, monies from the various corporate accounts of PCHH and AAHC to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
## (18 U.S.C. § 371 - Conspiracy)

### D-10 PRAMOD RAVAL, M.D.

42.     Paragraphs 1 through 24 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

43.     From in or around June 2006, and continuing through in or around September 2009, the exact dates being unknown to the Grand Jury, at Wayne County, in the Eastern District of Michigan, and elsewhere, the defendant, PRAMOD RAVAL, M.D., and others did willfully and knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

(a) to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A) by knowingly and willfully offering or paying any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b); and

(b) to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A) by knowingly and willfully soliciting or receiveing any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring

an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b).

### Purpose of the Conspiracy

44. It was a purpose of the conspiracy for defendant PRAMOD RAVAL, M.D. and others to unlawfully enrich themselves by offering, paying, soliciting and receiving kickbacks and bribes in exchange for the use of Medicare numbers for (1) patients under their care, or (2) beneficiaries under their custody and control by co-conspirators as the bases of claims filed for physical therapy services.

### MANNER AND MEANS

45. The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among other things:

46. PRAMOD RAVAL, M.D. would establish and operate a medical practice at 24661 Coolidge Highway, Oak Park, Michigan and other locations.

47. A co-conspirator would incorporate and/or control two home health agencies in Oakland County, Michigan – PCHH and AAHC – for the purpose of billing Medicare for purportedly providing in home physical therapy and other services to patients.

48. A co-conspirator would write checks from the accounts of one of his companies, AAA Marketer, and would provide the checks to defendant PRAMOD RAVAL, M.D., and at PRAMOD RAVAL, M.D.'s direction, to two companies associated with PRAMOD RAVAL, M.D., Voak Marketing and DSK Construction. These checks were in exchange for the referral of Medicare beneficiaries to be billed by PCHH and AAHC for physical therapy services.

49. The co-conspirator would pay PRAMOD RAVAL, M.D. or entities related to PRAMOD RAVAL, M.D., more than $170,000 for Medicare beneficiary referrals. In exchange for the payments, a co-conspirator would receive Medicare beneficiary referrals from PRAMOD RAVAL, M.D. over a two year period.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its purposes and objects, at least one of the conspirators committed, or caused to be committed, in the Eastern District of Michigan, the following overt acts, among others:

50. On or about June 8, 2006, a co-conspirator paid Voak Marketing, at PRAMOD RAVAL, M.D.'s direction, $50,000 by check drawn from his AAA Marketer in exchange for Medicare beneficiary referrals.

All in violation of Title 18, United States Code, Section 371.

## COUNT 3
### (18 U.S.C. §§ 1957 and 2 – Money Laundering)

### D-3 HASSAN AKHTAR

51. On or about the dates set forth below, in Oakland County, in the Eastern District of Michigan, and elsewhere, HASSAN AKHTAR knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, health care fraud, in violation of Title 18, United States Code, Section 1347:

| Count | Defendant | On or about Date | Financial Transaction |
|---|---|---|---|
| 3 | HASSAN AKHTAR | 9/26/08 | Check from an AAHC account at Bank of America, #54053469413, in the amount of $30,000, made payable to SH Consultant and Staffing, Inc., deposited into a SH Consultant and Staffing, Inc. account at National City Bank, #986182188 |

All in violation of Title 18, United States Code, Section 1957 and 2.

## COUNT 4
### (18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 – Money Laundering)
### D-3 HASSAN AKHTAR

52. On or about the dates specified as to each count below, in Oakland County, in the Eastern District of Michigan, and elsewhere, HASSAN AKHTAR did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which in fact involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, health care fraud, in violation of Title 18, United States Code, Section 1347:

| Count | Defendant(s) | On or about Date | Financial Transaction |
|---|---|---|---|
| 4 | HASSAN AKHTAR | 7/30/08 | Check from an AAHC account at Bank of America, #54053469413, in the amount of $23,500, made payable to SH Consultant and Staffing, Inc., deposited into a SH Consultant and Staffing, Inc. account at National City Bank, #986182188 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

**D-3 HASSAN AKHTAR**
**D-4 CURTIS MALLORY**
**D-9 VISHNU MEDA**
**D-10 PRAMOD RAVAL, M.D.**
**D-14 CHIRADEEP GUPTA**
**D-15 RICHARD SHANNON**
**D-16 NABILA MAHBUB**
**D-17 THEODORE HAILE**

53.     The allegations contained in Counts 1 through 4 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, that is, HASSAN AKHTAR, CURTIS MALLORY, VISHNU MEDA, PRAMOD RAVAL, M.D., CHIRADEEP GUPTA, RICHARD SHANNON, NABILA MAHBUB and THEODORE HAILE' have an interest in pursuant to the provisions of Title 18, United States Code, Sections 982(a)(1) and 982(a)(7).

54.     Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of HASSAN AKHTAR, CURTIS MALLORY, VISHNU MEDA, PRAMOD RAVAL, M.D., CHIRADEEP GUPTA, RICHARD SHANNON, NABILA MAHBUB and THEODORE HAILE for any of the offenses charged in Counts 1 through 6 of this Indictment, the DEFENDANTS shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the health care fraud offense. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount derived from such offense.

55.     Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of the defendant, HASSAN AKHTAR, for the money laundering offenses charged in this

Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount of property involved in such an offense.

    56.    Property subject to forfeiture to the United States pursuant to conviction for any offense charged in this Indictment, or the money laundering offenses charged in this indictment, includes but is not limited to, cash, all bank accounts and brokerage accounts; all interests in real estate, partnerships or corporations of any kind, and their assets; all personal property; and other assets, acquired during the time of the offenses, with the proceeds of health care fraud, and/or was property involved in any of the violations.

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

THIS IS A TRUE BILL.

/s GRAND JURY FOREPERSON
Grand Jury Foreperson


BARBARA L. MCQUADE
UNITED STATES ATTORNEY


s/WAYNE F. PRATT
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-2548
Wayne.pratt@usdoj.gov


s/ JOHN K. NEAL
JOHN K. NEAL
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Bond Building, Third Floor
Washington, D.C. 20005
(202) 305-1145
John.neal@usdoj.gov

/s GEJAA GOBENA
GEJAA GOBENA
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Bond Building, Third Floor
Washington, D.C. 20005
(313) 226-0831
Gejaa.gobena@usdoj.gov

Dated: July 13, 2010

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number 10-cr-20014 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008   [ ]

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes         ☐ No | AUSA's Initials: |

Case Title: USA v.  D-3 HASSAN AKHTAR et. al.

County where offense occurred :  Wayne

Check One:        X☐ Felony              ☐ Misdemeanor              ☐ Petty

    ____Indictment/____Information ---  no prior complaint.
    ____Indictment/____Information ---  based upon prior complaint [Case number: ]
    __X_Indictment/____Information ---  based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No: 10-cr-20014**                    **Judge: Hood**

    ☐ Original case was terminated; no additional charges or defendants.
    ☐ Corrects errors; no additional charges or defendants.
    ☐ Involves, for plea purposes, different charges or adds counts.
    ☐ XEmbraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| D-14 CHIRADEEP GUPTA, | 18 U.S.C. § 1349 | |
| D-15 RICHARD SHANNON | 18 U.S.C. § 1349 | |
| D-16 NABILA MAHBUB, | 18 U.S.C. § 1349 | |
| D-17 THEODORE HAILE, | 18 U.S.C. § 1349 | |

**Please take notice that the below listed Attorney is the attorney of record for the above captioned case.**

July 13, 2010
    Date

GEJAA T. GOBENA
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
3rd Floor Bond Building
1400 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (313) 226-0831
Email: Gejaa.gobena@usdoj.gov

Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09